IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-03008-RBJ

ADDISON INSURANCE COMPANY, an Iowa corporation,

      Plaintiff,

vs.

MICHAEL VEVERKA, an individual,

      Defendant.
_____

**MOTION FOR SUMMARY JUDGMENT RE PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND DEFENDANT'S COUNTERCLAIMS FOR (1) BREACH OF CONTRACT; (2) BAD FAITH BREACH OF CONTRACT; AND (3) VIOLATION OF C.R.S. SECTION 10-3-1115, ET SEQ.**
_____

      Plaintiff Addison Insurance Company ("Addison"), by and through its attorneys, Lambdin & Chaney, LLP, submits its Motion for Summary Judgment re Plaintiff's Claims for Declaratory Judgment and Defendant's Counterclaims for (1) Breach of Contract; (2) Bad Faith Breach of Contract; and (3) Violation of C.R.S. Section 10-3-1115, et seq., stating as follows:

>       <u>D.C.Colo.LCivR 7.1 Certification</u>: Counsel for Addison has conferred with counsel for Defendant prior to the filing of this Motion for Summary Judgment.  Defendant opposes Addison's Motion and the relief sought.

## I.      <u>INTRODUCTION AND JURISDICTIONAL STATEMENT</u>

This Court has original jurisdiction of the within matter pursuant to 28 U.S.C. Section 1332(a), as there is diversity between the parties; the amount in controversy exceeds

$75,000. *See, Complaint for Declaratory Relief, ECF 1 at ¶¶ 3, 4; admitted by Defendant in ECF 10, ¶¶ 3, 4.* Defendant Michael Veverka seeks UIM benefits under his employer, Veverka Company, Inc.'s ("VCI"), commercial auto policy with Addison (the "Addison Commercial Policy") arising out of an accident on August 26, 2019 (the "Collision"). Plaintiff Addison moves for summary judgment to obtain a judicial declaration that there is no UIM coverage for Defendant's Collision under the Addison Commercial Policy at issue.  Furthermore, Addison asserts that since this Court has previously granted its motion to dismiss relative to Defendant's counterclaims, as they relate to the filing of a complaint for declaratory relief, and based on the current facts and circumstances, Defendant's counterclaims for breach of contract, bad faith breach of contract, and violation of C.R.S. Section 10-3-1115, are contrary to Colorado law and summary judgment should be granted as a matter of law.

## II.   <u>MOVANT, ADDISON'S STATEMENT OF UNDISPUTED FACTS</u>

1.      The Collision that is the subject of this action occurred on August 26, 2019, at approximately 7:45 p.m. *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶¶ 13,* 17; *admitted by Defendant in ECF 10, ¶¶ 13, 17.*

2.      At the time of the Collision, Defendant was employed with VCI.  *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶ 10.*

3.      At the time of the Collision, Defendant was not in the course and scope of his employment with VCI.  *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶ 14; admitted by Defendant in ECF 10, ¶ 14.*

4.      Addison issued to VCI the Addison Commercial Policy, policy number 60431695, effective from April 29, 2019 to April 29, 2020.  *See, Complaint for Declaratory*

*Relief's Complaint, ECF 1 at ¶ 11; admitted by Defendant in ECF 10, ¶ 11.*

5.      At the time of the Collision, Defendant was driving his personal motorcycle – a 1982 Yamaha. *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶ 14; admitted by Defendant in ECF 10, ¶ 14.*

6.      At the time of the Collision, the only vehicle listed as insured under the Addison Commercial Policy was a 1970 White Dump Truck, with Vin No. BB0048700451. *See, ECF 1, ¶ 23; ECF 1-1, Policy at 00006; admitted by Defendant in ECF 10, ¶ 23 "that the 1970 Dump Truck is the only vehicle listed" on the Policy.*

7.      Defendant's personal motorcycle – a 1982 Yamaha – was not listed as an insured vehicle on the Addison commercial policy and separately insured with Nationwide, policy number MSA0078012525.  *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶ 15; admitted by Defendant in ECF 10, ¶¶ 15.*

8.      Defendant settled with and received $25,000.00, from the tortfeasor's bodily injury liability insurer, Progressive.  *See, Plaintiff's Complaint, ECF 3 at ¶ 16; admitted by Defendant in ECF 10, ¶ 16.*

9.      Defendant made and settled an underinsured motorist claim with his personal automobile carrier, Liberty Mutual, for $100,000.00.

10.      Defendant made and settled an underinsured motorist claim with Nationwide (the insurer of the 1982 Yamaha motorcycle) for $300,000.00. *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶ 18; admitted by Defendant in ECF 10, ¶ 18.*

11.      Plaintiff has asserted a claim for underinsured motorist benefits under the Addison Commercial Policy issued to VCI.  *See, Complaint for Declaratory Relief's*

*Complaint, ECF 1 at ¶ 19; admitted by Defendant in ECF 10, ¶ 19.*

12.     The language of Addison's commercial policy of insurance contains the following pertinent language to the within coverage issues and motion for summary judgment:

**BUSINESS AUTO COVERAGE FORM**, **SECTION I – COVERED AUTOS** part:
Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages.  The following numerical symbols describe the "autos" that may be covered "autos".  The symbols entered next to a coverage on the Declarations ***designate the only "autos" that are covered "autos"***.
…

**ITEM TWO, Schedule of Coverages and Covered Autos**, the Policy states in pertinent part:

This policy provides only those coverages where a charge is shown in the PREMIUM column below.  Each of these coverages will apply only to those "autos" shown as COVERED AUTOS below.

| COVERAGES | COVERED AUTO SYMBOLS | LIMIT OF INSURANCE |
|---|---|---|
| Covered Auto Liability | 07 | $1,000,000 |
| *     *     * | | |
| Uninsured Motorists – BI Only (including Underinsured Motorists) | 07 | $   300,000 |

…

**BUSINESS AUTO COVERAGE FORM**, **SECTION I – COVERED AUTOS**, **A. Description of Covered Auto Designation Symbols**, below in pertinent part, symbol 07 is described as follows:

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |

…

**COLORADO UNINSURED MOTORIST COVERAGE – BODILY INJURY, B. Who Is an Insured**

If the Named Insured is designated in the Declarations as:

…
2.       A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    a.       Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto" …

…

**BUSINESS AUTO COVERAGE FORM, SECTION II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured**:

The following are "insureds":

**a.**       You for any covered "auto".

**b.**       Anyone else while using with your permission a covered "auto" you own, hire or borrow ***except***:

    **(1)**       The owner or anyone else from whom you hire or borrow a covered "auto".

    **(2)**       Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

*See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶¶ 20, 21, 22, 24, 25, 26, and accompanying Exhibit A at Policy 0010, 0005, 0026, 0027, 0011; admitted by Defendant in ECF 10, ¶¶ 20, 21, 22, 24, 25, 26, and accompanying Exhibit A at Policy 0010, 0005, 0026, 0027, 0011.*

13.       The Addison Commercial Policy also contains the following pertinent

provisions with respect to UM/UIM coverage:

**COLORADO UNINSURED MOTORIST COVERAGE – BODILY INJURY**

**A.       Coverage**

    **1.**       We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident."  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

*See, ECF 1-1, Policy at 00026.*

14.     The Addison Commercial Policy also contains the following pertinent policy condition:

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

A.      Loss Conditions
…
      2.      **Duties in the Event of Accident, Claim, Suit, or Loss**.
         …
         b.      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

              (4) Authorize us to obtain medical records or other pertinent information.

              (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

*See, ECF 1-1, Policy at 0017.*

### III.     LAW AND ARGUMENT

1.     ***Declaratory Relief is Proper In this Action.***

Declaratory relief is authorized and appropriate pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, as there is an actual controversy between the parties regarding coverage afforded under the Addison policy, and such relief is necessary to declare the parties' contractual rights duties and obligations.   *See, Complaint for Declaratory Relief, ECF 1 at ¶¶ 5, 6, 7.*

2.     ***Colorado Law Controls the Interpretation of the Policy***.

In diversity cases, the Court applies the substantive law of the forum state. *See, Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009); *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994).

In Colorado, the interpretation of the contractual terms of an insurance policy is a

matter of law. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004). "An insurance policy, like any written contract, presents a question of law and, therefore, is appropriate for summary judgment." *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.,* 917 P.2d 321, 323 (Colo. App. 1995). Under Colorado law, insurance policies are construed under the same traditional principles that govern the interpretation of any contract. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999). Courts must enforce the plain language and ordinary meaning of the policy unless it is ambiguous or the written policy expresses otherwise. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007

3. ***Standard of Review for Summary Judgment***.

A moving party is entitled to summary judgment if the evidence presented to the Court indicates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986). Here, the key factual issues are either admitted in the answer or are a matter of interpreting the contractual language of the Policy. Under the applicable law and per the terms of the Policy, there is no UIM coverage available to Defendant under the Addison Commercial Policy for the Collision, nor is there any basis for Defendant's counterclaims for breach of contract, bad faith breach of contract or violation of C.R.S. Section 10-3-1115.

4. ***Colorado Law Imposes the Burden of Proof on Defendant to Show Coverage Exists***.

It is well settled in Colorado law that the party seeking insurance coverage bears the burden of demonstrating an entitlement to coverage under the insuring agreement. *Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991). Additionally, once the party moving for summary judgment makes its *prima facie* case, the burden

shifts to the non-moving party to prove that there are genuine disputes of material fact requiring trial. Fed. R. Civ. P. 56(c); *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998); *Celotex*, 477 U.S. at 324. The non-moving party's opposition must set forth specific facts showing that there is a genuine issue for trial. *Robertson v. Bd. of County Comm'rs of the County of Morgan*, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999). "A party opposing summary judgment must do more than assert allegations constituting a claim." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016), citing *Travis v. Park City Mun. Corp.* 565 F.3d 1252, 1257-58 (10th Cir. 2009).  Rather, "[t]o survive a motion for summary judgment, the nonmoving party must set forth specific facts that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Christy*, 810 F.3d at 1233

5. ***Defendant Veverka is Not an "Insured" Under the Policy's Liability Coverage***.

The Addison Commercial Policy's sole named insured is "Veverka Company, Inc." with an address at P.O. Box 12, Mack, CO 81525-0012.  [ECF 1-1, Policy, at 00002; *see also* ECF 1-1, Policy at 0011 (defining "you" as the named insured)]  Here, Defendant Veverka does not fall under the definition of "you" under 1.a., as "you" is defined to be the Named Insured in the Declarations.   The Named Insured in the Declarations is unambiguously listed as follows:



*See, ECF 1-1, Policy at 0005*.

"You" in the Policy means VCI only.  "You" does not include VCI's employees, owners or agents.  "The identification of the named insured is of paramount interest to the

insurance carrier.  Consequently, in interpreting insurance policies, courts have held that the term "named insured" has a restricted meaning and does not apply to any persons other than those named in the policy."  *Mid-Century Ins. Co. v. Lijestrand*, 620 P.2d 1064, 1067 (Colo. 1980); *see* also, *D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.*, 39 P.3d 1205, 1207 (Colo. App. 2001).  The policy clearly states that "you" only means VCI, the Named Insured shown in the declarations.

Under circumstances not present here an employee of VCI could be an "insured," but the Policy's plain language clearly excludes Defendant from being an "insured." In the Policy at BUSINESS AUTO COVERAGE FORM, SECTION II – LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured, The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow *except*:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto".  This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

\*       \*       \*

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

[ECF 1-1, Policy, at 0011-0012]

By the explicit language of the policy, Defendant is not an insured under the Addison Commercial Policy, whether as an owner or as an employee.  It is undisputed that the 1982 Yamaha motorcycle, driven by Defendant on the date of the Collision, was not a "covered auto" under the Addison Commercial Policy.  *See, ECF 1, ¶23; ECF 1-1,*

Policy at 00006; admitted by Defendant in ECF 10, ¶23 "that the 1970 Dump Truck is the only vehicle listed" on the Policy.

Moreover, it is undisputed that Defendant was driving his own personal 1982 Yamaha at the time of the Collision, a motorcycle for which Defendant maintained separate insurance coverage with Nationwide. *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶ 15; admitted by Defendant in ECF 10, ¶¶ 14, 15.* Construing the above policy language, an employee of VCI, may only be provided coverage when using with VCI's permission a covered auto owned, hired or borrowed by VCI.  Indeed, if the coverage granted to "you" in Section II.A.1.a. includes coverage for VCI's employees and agents, then the exclusions found in Section II.A.1.b. for employees driving their own auto and for the owners of hired or borrowed autos would be read out of the policy.  This is impermissible because the Court must view the policy as a whole and give effect to all of the contract's provisions.

In *Unigard v. Mission Insurance Co.*, 907 P.2d 94, 100 (Colo. App. 1994) the Colorado Court of Appeals held that an employee driving their own car did not qualify as an insured under a standard commercial auto policy.  *See also*, *Gen. Ins. Co. of Am. v. Smith*, 874 P.2d 412, 414 (Colo. App. 1993) (half owner, officer and director of corporation not within the meaning of "you" when Named Insured is a corporation).  In addition, other courts interpreting language identical to the policy at-issue have held that employees are not within the meaning of the defined term "you" in a commercial auto policy.  *Meyer v. City of Amery*, 518 N.W.2d 296, 298 (Wis. Ct. App. 1994).

Accordingly, Defendant does not qualify as "you" for purposes of Who is An Insured under Section II.A.1.a.  He also does not qualify as an insured under Section

II.A.1.b because Defendant was not using a vehicle owned, hired, or borrowed by VCI at the time of the accident, which would nevertheless be excluded as he was driving a vehicle that he personally owned.

6. ***Defendant is Not an "Insured" Under the Policy's UM/UIM Coverage***.

Under the clear language of the Addison Commercial Policy, Defendant was not an "insured" for UM/UIM coverage at the time of the Collision. The Addison Commercial Policy contains a Colorado-specific endorsement with its own definition of "insureds" for UM/UIM coverage. Pursuant to COLORADO UNINSURED MOTORIST COVERAGE – BODILY INJURY, B. Who Is An Insured, the Policy states in pertinent part:

> If the Named Insured is designated in the Declarations as:
> …
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
> > a. Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto" ….

[Doc. 1-1, pages 151-152].

Therefore, to overcome summary judgment Defendant must show he was using a "covered 'auto' or a temporary substitute for a covered 'auto'" during the Collision. The Policy clearly sets out what a "covered 'auto'" is for UM/UIM coverage by stating that:

> This policy provides only those coverages where a charge is shown in the PREMIUM column below. Each of these coverages will apply only to those "autos" shown as COVERED AUTOS below. "

| Coverages | Covered Autos | Limit |
|---|---|---|
| Liability | 07 | $1,000,000 CSL |
| * * * | | |
| Uninsured      Motorists | 07 | $300,000 CSL |

| (including Underinsured Motorists) | | |
|---|---|---|

[ECF 1-1, at Policy 0005]

The "covered autos" codes are defined in the Policy [ECF 1-1, Policy at 0010], which provides in pertinent part that symbol 07 is as follows:

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 07 | Specifically Described "Autos" | Only those "autos described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three) |

Here, the Declarations undisputedly only list the 1970 White Dump Truck as a covered auto. *See, ECF 1-1, Policy at 0006; see also, ECF 1, ¶ 23; ECF 1-1, Policy at 00006; admitted by Defendant in ECF 10, ¶ 23 "that the 1970 Dump Truck is the only vehicle listed" on the Policy.* It is undisputed that VCI did not own the 1982 Yamaha motorcycle driven by Defendant in the Collision; that Defendant's 1982 Yamaha motorcycle was owned personally by Defendant; and, in fact, that Defendant maintained separate and personal automobile insurance for the 1982 Yamaha motorcycle with Nationwide. *See, Complaint for Declaratory Relief's Complaint, ECF 1 at ¶ 15; admitted by Defendant in ECF 10, ¶¶ 14, 15.* Therefore, the plain wording of the Addison Commercial Policy does not give Defendant any UIM coverage for the Collision because his 1982 Yamaha motorcycle was not an "owned 'auto'." Further, an employee driving a car he/she owns is expressly excluded from the definition of an insured under the Policy.

[ECF 1-1, Policy, at 0011-0012].

7.   ***Defendant's Personally Owned 1982 Yamaha Motorcycle is Not a Temporary Substitute for 1970 Dump Truck Insured Under the Addison Commercial Policy.***

Although never argued by Defendant prior to or at the time of Addison's filing of the Complaint for Declaratory Judgment, Defendant now claims that his personally owned and separately insured 1982 Yamaha motorcycle was a temporary substitute vehicle for the 1970 Dump Truck insured under the Addison Commercial Policy.

The 1982 Yamaha motorcycle was not a "temporary substitute vehicle" for the 1970 Dump Truck.  The plain and ordinary meaning of the word "substitute" is "a person or thing that takes the place or function of another."   *See*, Merriam-Webster Online Dictionary, http:/222.merriam-webster.com/dictionary/substitute (last visited May 16, 2020).  "[I]n order for coverage to attach in this case, the temporary substitute vehicle must have been performing a function that the disabled insured vehicle would have been performing but for its temporary disability."  *Falls Lake Nat'l Ins. Co. v. Martinez*, 2016 U.S. Dist. LEXIX 177909, citing *Duncan Auto Realty Ltd. v. Allstate Ins. Co.*, 754 So.2d 863, 865 (Fla. Ct. App. 3d Dist. 2000); and C*ouch on Insurance Sections 1117; 83 & 117.89 (3rd rev. ed. 1997.  A copy of *Falls Lake Nat'l Ins. Co. v. Martinez is attached and incorporated for reference as* **Exhibit 1***; see also, Mid-Century Ins. Co. v. Robles,* 271 P.3d 592 (Colo. 2011) [when a "vehicle of equivalent use is substituted"]; *Nationwide Mut. Ins. C. v. Mast*, 153 A.2d 893, 1959 Del. Super. LEXIS 84, 52 Del. 127 (1959) [the intent of the parties was to ensure the described vehicle and any reasonable replacement, i.e., one adapted to the same commercial use"], a copy of which is attached as ***Exhibit 2***.

Accordingly, the critical focus for determining a temporary substitute vehicle "is

whether it is put to the same use to which the covered vehicle would have been put but for its withdrawal from service."  S*tonehocker v. Gulf Ins. Co.*, 368 P.3d 1187, 2016 Mont. LEXIS 254 (Sup. Ct. MT 2016), relying upon *Progressive Casualty Insurance Co. v. Owen*, 519 F.3d 1035 (9th Cir. 2008); *Second Edition of Couch on Insurance.*  A copy of S*tonehocker v. Gulf Ins. Co. is attached and incorporated by reference as **Exhibit 3**.

Here, there is no plausible explanation as to how a 1982 Yamaha motorcycle can be a temporary substitute for a dump truck.  Defendant inconsistently claims in his affidavit attached to his counterclaims that he was using the motorcycle as a temporary substitute while the dump truck was under repair.  See, ECF 10-1, ¶ 13.  However, Defendant further acknowledges in his Affidavit that the dump truck was used earlier in the day "dressing up washed out spots around culverts" and "hauled in a load of ¾ rock."  See, ECF 10-1, ¶ 10.  Clearly, a motorcycle is incapable of the same use as that of the dump truck - hauling rock and cleaning culverts.  In fact, the business of VCI, as noted on the policy, is that of "Excavation Contractor", a business for which a motorcycle is incapable of performing. *See, ECF 1-1, Policy at 0005.*

Importantly, at no time prior to the filing of the Complaint for Declaratory Judgment did Defendant claim the motorcycle was a temporary vehicle for the dump truck.  In fact, the use of the motorcycle as a temporary vehicle flies in the face of Defendant's admissions that he was not in the course and scope of his employment at the time of the accident.  Moreover, Defendant has changed the facts of an alleged temporary substitute vehicle from writing to writing.  First, in Defendant's counterclaim, he asserts for the first time that Defendant "had gone to pick up parts for the repair"; then in the Affidavit attached to the counterclaim, Defendant claims he "hurried home before [the tire on the dump truck]

went flat." Then, later in the Affidavit, Defendant claims "for safety reasons, I returned the Dump Truck to the parking lot where it is stored." The facts then change again in a letter from opposing counsel dated March 9, 2020, where Defendant then states he was returning from making a company deposit to the bank when the accident occurred (*see letter dated March 9, 2020 from Defendant's counsel to Plaintiff's counsel, attached and incorporated by reference as **Exhibit 4**;* however, it should be noted here that the accident occurred at 7:45 p.m., on August 26, 2019. The alleged deposit by Defendant was made at 2:56 p.m. on August 26, 2019, nearly five hours earlier. *See, Bank Deposit Receipt attached and incorporated by reference as **Exhibit 5**.* Moreover, there is nothing on this bank deposit document that states the deposit was made in person, particularly when the document itself notes a "virtual document" Regardless of whether the check was deposited in person or virtually, the mere fact that a check for VCI was deposited five hours prior to the accident does not, in any respect, support that the 1982 Yamaha motorcycle was being put to the same use to which the covered Dump Truck vehicle would have .been put (i.e., excavation work) but for its alleged repairs. Accordingly, the 1982 Yamaha motorcycle is not a temporary substitute vehicle for the Dump Truck covered auto under the Addison Commercial Policy.

8.    ***Defendant's Counterclaims for Breach of Contract, Bad Faith Breach of Contract and Violation of C.R.S. Section 10-3-1115 are Untenable and Summary Judgment Should be Granted to Addison as a Matter of Law***.

(a)    *Breach of Contract*. "It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff [Defendant here] or some justification for nonperformance; (3) failure to perform the contract by the defendant

[Plaintiff here]; and (4) resulting damages to the plaintiff [Defendant here]." *W. Distrib. V. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

Pursuant to the terms and conditions of the insurance policy, as well as C.R.S. § 10-4-609, and pertinent case law, Defendant bears the burden of proof with regard to his claimed legal entitlement to underinsured motorist benefits. *See, ECF 1-1. Policy at 0026*; *see also*, C.R.S. § 10-4-609; *Briggs v. American Family Mut. Ins. Co., 833 P.2d 859, 861 (Colo. App. 1992).* Defendant has not, and cannot, present any evidence that Addison has failed to perform its obligations under the insurance policy. Not only is there a valid and justiciable coverage issue involving Defendant's claimed legal entitlement to UIM benefits, Defendant has not at any time prior to the filing of the Declaratory Judgment action, nor currently, provided any medical records or billings supporting his claims of injury, or that his claim is worth in excess of the already received and available bodily injury and UIM limits of other applicable insurance policies - only the arguments and statements of counsel. Such information is crucial to any determination of Defendant's legal entitlement to UIM benefits.

Pursuant to the terms and conditions of the insurance contract, Defendant has an affirmative obligation to cooperate with Addison and provide Addison all information necessary to properly evaluate Defendant's claim. *See, ECF 1-1, Policy at 0017*. Accordingly, Addison cannot be said to have failed to perform the insurance contract, as its performance was not due under the terms and conditions of the insurance contract given Defendant's failure to provide any evidence that he is "legally entitled" to UIM benefits. Addison's reliance on the insurance policy contractual provisions does not amount to a breach of the insurance contract. See, *Williams v. Owners Ins. Co.*, 621 Fed.

Appx. 914, 918, 2015 U.S.App. LEXIX 12170 (10th Cir. 2015) (Not Selected for Publication), a copy of which opinion is attached and incorporated by reference as ***Exhibit 6,*** pursuant to U.S.Ct. of App. 10th Cir. Rule 32.1(b).  Accordingly, Defendant's failure to comply with the policy provisions and provide documentation that he is "legally entitled" to recover UIM benefits is fatal to Defendant's claims for breach of contract, and Addison is entitled to summary judgment as a matter of law.

(b)   <u>*Bad Faith Breach of Insurance Contract and Violation of C.R.S. Section 10-3-1115.*</u>  Defendant's claims for bad faith breach of insurance contract and violation of C.R.S. Section 10-3-1115 are predicated on a perceived unreasonable delay and/or denial of UIM benefits by Addison; however, no such delay and/or denial has occurred. To prevail on a claim for bad faith breach of contract, Defendant must prove that Addison's conduct was unreasonable or in reckless disregard of the fact that the conduct was unreasonable.  *Williams v. Owners Ins. Co.*, 621 Fed. Appx. 914, 918-919 (10th Cir. 2015) (Not Selected for Publication), ***Exhibit 6,*** citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985) (en banc).  To prevail on their claim for violation of C.R.S. §§ 10-3-1115, Plaintiffs must prove that (1) benefits were owed under the policy; and (2) Addison unreasonably delayed or denied payment of Defendant's claim.

Pursuant to C.R.S. § 10-3-1115, an insurer breaches these statutory duties if, and only if, there was "no reasonable basis to delay or deny the claim for benefits."  *See*, *Williams v. Owners Ins. Co.*, 621 Fed. Appx. 914, 919 (10th Cir. 2015) (Not Selected for Publication), ***Exhibit 6***, citing *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 974 (Colo. App. 2011).  Defendant's claims under common law and statutory law impose liability if, and only if, Addison acted unreasonably. *See*, *Williams v. Owners Ins. Co.*, 621

Fed. Appx. 914, 919 (10th Cir. 2015) (Not Selected for Publication), ***Exhibit 6***.   Both claims are evaluated objectively, based on industry standards. *Id at 919**, Exhibit 6**, citing Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1276 (Colo. 1985 (common law claim), and Fisher v. State Farm Mut. Auto. Ins.  Co., 2015 COA 57, ¶53, 2015 WL 2198515 at \*9 (statutory claim).*  The burden is on Defendant to establish and prove that Addison acted unreasonably.   *Williams, 621 Fed. App. 914, 918, **Exhibit 6**, citing Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004).

As discussed above with respect to Defendant's breach of contract claim, Defendant has not, and cannot, present any evidence that Addison has acted unreasonably and/or with reckless disregard of the fact that the conduct was unreasonable and/or unreasonably delayed or denied any underinsured motorist benefits to Defendant.   Importantly, Defendant has failed to provide any objective proof that Addison's actions in this case were unreasonable by any industry standard.  In fact, prior to filing of the declaratory judgment action, nor currently, has Defendant provided any documentation that he is legally entitled to underinsured motorist benefits under the Addison Commercial policy, much less any breach of industry standards.  Defendant merely claims, through arguments of counsel and despite pending coverage issues, that he is entitled to the Addison Commercial Policy limits.  Accordingly, Defendant's claims against Addison for bad faith breach of insurance contract and violation of C.R.S. Section 10-3-1115 are devoid of any evidentiary proof that Addison acted unreasonably under the facts and circumstances of this case.

Although the issue of unreasonableness is usually a question of law, "in appropriate circumstances, as when there are no genuine issues of material fact,

reasonableness may be decided as a matter of law." *Williams v. Owners Ins. Co.*, 621 Fed. Appx. 914, 919 (10th Cir. 2015) (Not Selected for Publication), ***Exhibit 6,*** citing *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008).  As Defendant fails to provide any substantiation or evidence regarding his claims of alleged unreasonableness on the part of Addison, Addison is entitled to summary judgment as a matter of law, as to Defendant's claims of bad faith breach of insurance contract and violation of C.R.S. Section 10-3—1115.

## CONCLUSION

Based on the foregoing, Addison respectfully requests the following:  (1) that summary judgment be granted in favor of Addison on Addison's Complaint for Declaratory Judgment, and that no UIM coverage is available to Defendant under the Addison Commercial Policy; and (2) that summary judgment be granted against the Defendant on his counterclaims for (a) breach of contract; (b) bad faith breach of contract; and (3) violation of C.R.S. §§ 10-3-1115.  Addison respectfully requests any and all further relief as this Court deems just and proper.

DATED this <u>18th</u> day of May, 2020.

Respectfully submitted:

By:     <u>s/ Elaine K. Stafford</u>
        L. Kathleen Chaney
        Elaine K. Stafford
        LAMBDIN & CHANEY, LLP
        4949 South Syracuse Street, Suite 600
        Denver, CO 80237
        (303) 799-8889
        (303) 799-3700 (facsimile)
        Email:  kchaney@lclaw.net; estafford@lclaw.net
        *Attorneys for Plaintiff Addison Insurance*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2020, a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT RE PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND DEFENDANT'S COUNTERCLAIMS FOR (1) BREACH OF CONTRACT; (2) BAD FAITH BREACH OF CONTRACT; AND (3) VIOLATION OF C.R.S. SECTION 10-3-1115, ET SEQ.** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Peter M. Anderson, Esq.: peter@attorneyanderson.com
Eric B. Ballou, Esq.: eric@attorneyandersron.com
*Attorneys for Defendant Michael Veverka*

By:     *s/ Elaine K. Stafford*
L. Kathleen Chaney
Elaine K. Stafford
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net; estafford@lclaw.net
*Attorneys for Plaintiff Addison Insurance*